DECISION
{¶ 1} Relator, Christine Martishius, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her motion for payment of wage loss compensation and to order the commission to grant said compensation. *Page 2 
 {¶ 2} Pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found that the commission did not abuse its discretion when it determined that relator failed to submit sufficient evidence to establish a right to wage loss compensation. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision. Relator advances three arguments. In her first objection, relator points out that despite the magistrate's acknowledgment that the commission was incorrect in concluding relator failed to register with the job placement service, the magistrate nevertheless found no abuse of discretion by the commission for using relator's purported failure to register as a basis for denying wage loss compensation. Relator contends the magistrate's analysis is flawed. We disagree.
 {¶ 4} Although the commission's conclusion that relator did not register with a job placement service seems inaccurate, that apparent inaccuracy does not indicate a flaw in the magistrate's analysis. Nor does it support relator's request for mandamus relief. Relator's submission of one call-in notice from SCOTI at the end of the period for which she was seeking wage loss compensation does not prove that relator engaged in a good-faith job search during the entire period. Relator sought wage loss compensation for the closed period of July 19, 2004 to April 17, 2005. The call-in notice raised by relator was dated March 17, 2005. Although the call-in notice would be some evidence that relator registered with a job placement service sometime prior to her receipt of the notice, it does not establish when relator registered. Nor did relator present any other evidence to *Page 3 
establish when she registered with the job placement service. Absent evidence that relator registered with a job placement service early during the period for which she sought compensation, relator failed to present evidence that she acted in good faith in seeking comparably paying work during said period of time. Therefore, we agree with the magistrate's conclusion that the commission's finding that relator did not register with the job placement service is essentially harmless because relator still failed to meet her burden to show that she registered with the job placement service at a time commensurate with the period for which she sought wage loss compensation. Therefore, we overrule relator's first objection.
 {¶ 5} In her second objection, relator contends the commission's determination that she submitted no wage loss statements was incorrect. Relator points out that the stipulated record contains wage-related information including the Ohio Bureau of Workers' Compensation ("BWC") forms C-94A and checks stubs from two different employers documenting alternative employment and lost wages. Therefore, relator argues that the magistrate should have found that the commission abused its discretion when it concluded that relator submitted no wage loss information. Relator also criticizes the magistrate for going outside the four corners of the commission's order by examining the type and sufficiency of wage loss information submitted by relator. We fail, however, to see how the magistrate's thorough review of the record was improper.
 {¶ 6} The magistrate properly evaluated whether relator had established a clear legal right to working wage loss compensation. "A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record." State ex rel. Streety v.Hill *Page 4 Crest Egg Cheese Co., Franklin App. No. 05AP-637, 2006-Ohio-2308, at ¶ 16, citing State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. The magistrate simply reviewed whether the commission's order is supported by some evidence and whether relator met her burden of showing that she had a clear legal right to the compensation she sought. After reviewing the record, the magistrate determined that the commission was correct in concluding that relator failed to submit a wage loss statement (BWC form C-141). The fact that relator submitted other wage-related information does not make the commission's finding inaccurate. As noted by the magistrate, BWC form C-141 is utilized to document a claimant's job search — including the employers they contacted weekly, the method of contact, the person contacted and the result of the contact. We agree with the magistrate that the commission did not abuse its discretion in denying wage loss compensation based upon relator's failure to submit a wage loss statement — even though relator submitted other documents in an attempt to prove a wage loss. The fact that the magistrate examined these other documents and still concluded that relator failed to meet her burden is not a reason to grant mandamus relief. Therefore, we overrule relator's second objection.
 {¶ 7} In her last objection, relator argues that she is entitled to working wage loss compensation because she has demonstrated claim-related impairments which preclude return to her former position of employment and she has resumed work at a job that has resulted in a wage loss. However, relator's objection simply ignores the requirement that a claimant must demonstrate a good-faith effort to secure comparably paying work before the claimant is entitled to working wage loss compensation. A good-faith effort necessitates claimant's consistent, sincere, and best attempt to obtain suitable *Page 5 
employment that will eliminate the wage loss. Here, we agree with the magistrate that the commission did not abuse its discretion when it found that relator failed to prove that she made a good-faith effort to secure comparably paying work. Therefore, we overrule relator's last objection.
 {¶ 8} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 McGRATH and WHITESIDE, JJ., concur.
WHITESIDE, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 6 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 9} Relator, Christine Martishius, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her motion seeking the payment of wage *Page 7 
loss compensation and ordering the commission to find that relator is entitled to that compensation.
Findings of Fact: {¶ 10} 1. Relator sustained a work-related injury on July 16, 2001 and, ultimately, her claim was allowed for all the following conditions: "herniated cervical discs at C4-5 and C5-6; aggravation of pre-existing degenerative disc disease (D.D.D.) at C4-5 and C5-6; lumbar strain; adjustment disorder with depressed mood; major depression, single episode, severe without psychosis (296.23)."
 {¶ 11} 2. Relator was unable to work for a period of time and received temporary total disability ("TTD") compensation for her allowed physical conditions into September 2002.
 {¶ 12} 3. In August 2005, relator filed a motion requesting that her claim be allowed for certain psychological conditions, the payment of a closed period of TTD compensation, authorization and payment for certain bills, and further seeking working wage loss compensation commencing July 19, 2004. With regards to relator's request for wage loss compensation, relator attached the following documentation: (1) the November 23, 2004 progress note of Darrell A. Hall, M.D., noting restrictions for standing, lifting, and reduced work hours; (2) a C-140 application for wage loss compensation dated April 27, 2005, the work history section of which was left blank; (3) a physical capacities report dated July 13, 2005, showing relator's restrictions; (4) a Call-In Notice from "Sharing Career Opportunities Training Information" ("SCOTI") dated March 17, 2005, informing relator of a job match; (5) a C-94-A wage statement which was left blank; (6) various pay stubs beginning July 26, 2004 and ending April 17, 2005; and (7) an attorney intake form *Page 8 
completed by relator which provided a description of her former job duties, the restrictions placed upon her by her physician of record, and a description of her current work as a hostess and an occasional bar keeper.
 {¶ 13} 4. Relator's motions were heard before a district hearing officer ("DHO") on December 6, 2005. The DHO additionally allowed relator's claim for a specific psychological condition, denied her request for TTD compensation, authorized the payment for certain services and, as is specifically relevant to this mandamus action, granted relator's request for working wage loss compensation as follows:
 This District Hearing Officer has considered and weighed the evidence, as required by Industrial Commission Rule 4125-1-01(D).
 It is the finding of this District Hearing Officer that injured worker's earnings from July 26, 2004 through April 17, 2005 were less than the injured worker's wages at the time of injured worker's injury with the instant employer.
 It is the further finding of this District Hearing Officer that the difference between injured worker's wages, at the time of injured worker's injury, and injured worker's earnings, for the period from July 26, 2004 through April 17, 2005, was the result of a medical impairment causally related to the industrial injury allowed in this claim, based upon the medical restrictions outlined in the reports of Darrell Hall, M.D., dated July 13, 2005.
 It is the finding of this District Hearing Officer that the injured worker has restrictions which arose out of this injury which prohibit the injured worker from returning to the former position of employment. (See medical evidence from Darrell Hall, M.D.)
 It is the further finding of this District Hearing Officer that the injured worker has made a good faith effort to search for suitable employment which is comparably paying work, but had not returned to suitable employment which was comparably paying work for the period from July 26, 2004 through April 17, 2005. It is the finding of this District Hearing *Page 9 
Officer that the injured worker has returned to suitable employment, within her residual functional capacity. However, said employment is not comparably paying work and the injured worker is currently unable to find comparably paying work within her residual functional capacity, due to the disability resulting from the industrial injury of July 16, 2001.
 It is the further finding of this District Hearing Officer that the injured worker has otherwise complied with the requirements of Industrial Commission Rule 4125-1-01(C) and (D).
 Therefore, the injured worker is hereby awarded wage loss compensation, pursuant to O.R.C. Section 4123.56(B), and Industrial Commission Rule 4125-1-01 from July 16, 2004 through April 17, 2005.
(Emphasis sic.)
 {¶ 14} 5. Both relator and respondent General Mills, Inc., appealed for various reasons.
 {¶ 15} 6. Prior to the hearing before a staff hearing officer ("SHO"), relator filed the following additional documentation: (1) an undated medical report showing restrictions beginning on August 15, 2005; (2) a progress note from Dr. Hall dated December 28, 2005; and (3) additional pay stubs and a wage loss worksheet covering the period from August 27 through December 17, 2005.
 {¶ 16} 7. The matter was heard before an SHO on January 27, 2006 and, as relevant to this action, relator's request for wage loss compensation was denied as follows:
 This Staff Hearing Officer DENIES the request for Working Wage Loss Compensation benefits as injured worker has failed to comply with the requirements of Industrial Commission Rule 4125-1-01(D). This Staff Hearing Officer finds the injured worker has not made a good faith effort to search for suitable employment which is comparably paying and finds that injured worker did not register with the Ohio *Page 10 
Department of Job Family Services. Further, the injured worker has submitted no wage loss statements. Therefore, because the requirements have not been met, the requested Working Wage Loss Compensation benefits is DENIED.
(Emphasis sic.)
 {¶ 17} 8. Relator's further appeal was refused by order of the commission mailed February 24, 2006.
 {¶ 18} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 19} Relator contends that the commission abused its discretion by denying her request for working wage loss compensation on the basis that she failed to meet her burden of proof. Relator contends that the commission's order fails to identify the evidence relied upon to deny her request for wage loss compensation, that there is no evidence in the record from which the SHO could have concluded that relator failed to register for employment assistance through the Ohio Department of Job and Family Services ("ODJFS"), and that the SHO abused her discretion in finding that relator failed to engage in a good-faith job search. For the reasons that follow, it is this magistrate's conclusion that this court should deny relator's request for a writ of mandamus.
 {¶ 20} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 21} Entitlement to wage loss compensation is governed by R.C.4123.56(B), which provides: *Page 11 
 Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than the employee's former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, the employee shall receive compensation at sixty-six and two-thirds per cent of the employee's weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks.
 {¶ 22} In order to receive workers' compensation, a claimant must show not only that a work-related injury arose out of and in the course of employment, but, also, that a direct and proximate causal relationship exists between the injury and the harm or disability. State ex rel.Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452. This principle is equally applicable to claims for wage loss compensation. State ex rel.The Andersons v. Indus. Comm. (1992), 64 Ohio St.3d 539. As noted by the court in State ex rel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118, a wage loss claim has two components: a reduction in wages and a causal relationship between the allowed condition and the wage loss.
 {¶ 23} In considering a claimant's eligibility for wage loss compensation, the commission is required to give consideration to, and to base the determination on, evidence relating to certain factors, including claimant's search for suitable employment. The Supreme Court of Ohio has held that a claimant is required to demonstrate a good-faith effort to search for suitable employment which is comparably paying work before claimant is entitled to both nonworking wage loss and working wage loss compensation. State ex rel. Pepsi-Cola Bottling Co. v.Morse (1995), 72 Ohio St.3d 210; State ex rel. Reamer v. Indus.Comm. (1997), 77 Ohio St.3d 450; and State ex rel. Rizer v. Indus. *Page 12 Comm. (2000), 88 Ohio St.3d 1. A good-faith effort necessitates claimant's consistent, sincere, and best attempt to obtain suitable employment that will eliminate the wage loss.
 {¶ 24} Ohio Adm. Code 4125-1-01(A) defines "suitable employment" and "comparably paying work" as follows:
 (7) "Suitable employment" means work which is within the claimant's physical capabilities, and which may be performed by the claimant subject to all physical, psychiatric, mental, and vocational limitations to which the claimant is subject at the time of the injury which resulted in the allowed conditions in the claim or, in occupational disease claims, on the date of the disability which resulted from the allowed conditions in the claim.
 (8) "Comparably paying work" means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.
 {¶ 25} Ohio Adm. Code 4125-1-01(C) identifies for claimants the relevant information which must be contained in an application for wage loss compensation. Specifically, Ohio Adm. Code 4125-1-01(C)(5) provides:
 (5) All claimants seeking or receiving working or non-working wage loss payments shall supplement their wage loss application with wage loss statements, describing the search for suitable employment, as provided herein. The claimant's failure to submit wage loss statements in accordance with this rule shall not result in the dismissal of the wage loss application, but shall result in the suspension of wage loss payments until the wage loss statements are submitted in accordance with this rule.
 (a) A claimant seeking or receiving wage loss compensation shall complete a wage loss statement(s) for every week during which wage loss compensation is sought.
 (b) A claimant seeking wage loss compensation shall submit the completed wage loss statements with the wage loss application and/or any subsequent request for wage loss compensation in the same claim. *Page 13 
 (c) A claimant who receives wage loss compensation for periods after the filing of the wage loss application and/or any subsequent request for wage loss compensation in the same claim shall submit the wage loss statements completed pursuant to paragraphs (C)(5)(a), (C)(5)(d) and (C)(5)(e) of this rule every four weeks to the bureau of worker's compensation or the self-insured employer during the period when wage loss compensation is received.
 (d) Wage loss statements shall include the address of each employer contacted, the employer's telephone number, the position sought, a reasonable identification by name or position of the person contacted, the method of contact, and the result of the contact.
 (e) Wage loss statements shall be submitted on forms provided by the bureau of workers' compensation.
 {¶ 26} Thereafter, Ohio Adm. Code 4125-1-01(D) provides, in pertinent part:
 (D) The claimant is solely responsible for and bears the burden of producing evidence regarding his or her entitlement to wage loss compensation. Unless the claimant meets this burden, wage loss compensation shall be denied.
 In considering a claimant's eligibility for compensation for wage loss, the adjudicator shall give consideration to, and base the determinations on, evidence in the file, or presented at hearing, relating to:
 (1) The claimant's search for suitable employment.
 (a) As a prerequisite to receiving wage loss compensation for any period during which such compensation is requested, the claimant shall demonstrate that he or she has:
 (i) Complied with paragraph (C)(2) of this rule and, if applicable, with paragraph (C)(3) of this rule [relating to the submission of medical evidence];
 (ii) Sought suitable employment with the employer of record at the onset of the first period for which wage loss compensation is requested. The claimant shall also seek suitable employment with the employer of record where *Page 14 
there has been an interruption in wage loss compensation benefits for a period of three months or more; and
 (iii) Registered with the Ohio bureau of employment services and begun or continued a job search if no suitable employment is available with the employer of record.
 (b) A claimant may first search for suitable employment which is within his or her skills, prior employment history, and educational background. If within sixty days from the commencement of the claimant's job search, he or she is unable to find such employment, the claimant shall expand his or her job search to include entry level and/or unskilled employment opportunities.
 (c) A good faith effort to search for suitable employment which is comparably paying work is required of those seeking non-working wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work, except for those claimants who are receiving public relief and are defined as work relief employees in Chapter 4127. of the Revised Code. A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss. * * *
 {¶ 27} Ohio Adm. Code 4125-1-01(D)(1)(c) provides certain relevant factors to be considered by the commission in evaluating whether claimant has made a good-faith effort. Those factors including: claimant's skills, prior employment history, and educational background; the number, quality, and regularity of contacts made with prospective employers; for a claimant seeking any amount of working wage loss compensation, the amount of time devoted to making prospective employer contacts during the period for which working wage loss is sought, as well as the number of hours spent working, any refusal by claimant to accept assistance from the Ohio Bureau of Workers' Compensation ("BWC") in finding employment; any refusal by claimant to accept the assistance of any public or private employment agency; labor market *Page 15 
conditions; claimant's physical capabilities; any recent activity on the part of claimant to change her place of residence and the impact such change would have on the reasonable probability of success and the search for employment; claimant's economic status; claimant's documentation of efforts to produce self-employment income; any part-time employment engaged in by claimant and whether that employment constitutes a voluntary limitation on claimant's present earnings; whether claimant restricts her search to employment that would require her to work fewer hours per week than she worked in the former position of employment; and whether, as a result of physical restrictions, claimant is enrolled in a rehabilitation program.
 {¶ 28} In the present case, the SHO denied relator wage loss compensation for three reasons: (1) relator failed to register with ODJFS; (2) relator failed to submit wage loss statements; and (3) relator failed to demonstrate that she made a good-faith effort to search for suitable employment which is comparably paying work. As noted above, claimant bears the burden of producing evidence showing that she is entitled to wage loss compensation. One of the requirements is that she must demonstrate that she registered with ODJFS. Upon a review of the record, relator did not present evidence that she registered with ODJFS. The only documentation in the record indicating that relator registered with any job placement service, is the March 17, 2005 call-in notice from SCOTI notifying relator that a job match had been selected for her. The form itself indicates:
 SCOTI is the job matching system that replaced Ohio Job Net (OJN). You were registered to find a job with the OJN system or the SCOTI system — either on-line, at an Ohio Department of Job and Family Services (ODJFS) office, in a One Stop office, or when you filed an unemployment claim. *Page 16 
Relator contends that this call-in notice should satisfy her burden; however, the commission disagreed.
 {¶ 29} Registering with a job placement service is a requirement. Relator did present evidence that she registered with some agency. However, relator was seeking wage loss compensation beginning July 19, 2004, and yet her evidence shows only one job match in eight months time. Perhaps, the commission could have found that relator's evidence did not establish that she registered in a timely fashion. However, the commission stated that she had failed to register entirely. As such, the commission did abuse its discretion by simply stating that relator failed to register. However, as more fully explained below, a writ of mandamus is not warranted.
 {¶ 30} The commission also denied relator wage loss compensation because she failed to submit "wage loss statements." Upon review of the record, the SHO is correct — relator did not submit a wage loss statement (BWC form C-141). This form is utilized to document a claimant's job search. The form provides for claimants to indicate the employers they contacted weekly, the method of the contact, the person contacted, and the result of the contact. Pursuant to Ohio Adm. Code4125-1-01 (C)(5), relator was required to submit wage loss statements. She did not and this constitutes a basis upon which the commission could rely in denying her wage loss compensation.
 {¶ 31} It is noted that relator did submit a C-94-A Wage Statement form and that relator submitted pay stubs for the time periods from July 26, 2004 through April 17, 2005, and from the period September 27, 2005 through the period ending December 17, 2005. Relator contends that these pay stubs met her burden of proof. *Page 17 
 {¶ 32} BWC form C-94-A is designed to provide wage information. It provides for a weekly breakdown of wages and hours worked. Further, when the form is completed by the injured worker, it must be notarized. Wage information can include check stubs, payroll ledgers, W-2 or other federal earning reports. This form provides the following instructions for claimants filing applications for wage loss compensation:
 INSTRUCTIONS: This Wage Statement should be completed and signed by the employer unless the injured worker is self-employed or unemployed. If the injured worker is self-employed or unemployed, both the Wage Statement and the affidavit must be completed.
 FAILURE TO FILE WAGE STATEMENTS MAY DELAY OR STOP COMPENSATION.
(Emphasis sic.)
 {¶ 33} Relator argues that the pay stubs she submitted essentially provided the required information and that she did meet her obligation under the law. Whether or not this court should accept that argument, the magistrate finds that the evidence submitted does not meet relator's burden of proof. Upon review of the pay stubs filed by relator, the magistrate notes the following: (1) between July 26 and October 17, 2004, relator worked approximately 24.5 hours per week; (2) relator submitted no wage information for the period October 18 through November 28, 2004; (3) between November 29 and December 26, 2004, relator worked approximately 29 hours per week; (4) relator submitted no wage information for the period December 27, 2004 through March 6, 2005; (5) between March 7 and April 17, 2005, relator worked approximately 22 hours per week; (6) relator submitted no wage information for the period April 18 through August 20, 2005; (7) the documentation submitted for the period August 21 through December 17, 2005, is difficult to understand since it appears as if relator worked every other week (see *Page 18 
page 55 of stipulation of evidence); and (8) although relator did sign a blank C-94-A, she did not have her signature notarized.
 {¶ 34} The commission has the discretion to determine whether a claimant has made a good-faith effort to secure comparably paying work on a case-by-case basis. In State ex rel. Harsch v. Indus. Comm. (1998),83 Ohio St.3d 280, the court reiterated that an adequate job search is a prerequisite to eligibility for wage loss compensation. Further, inState ex rel. Brinkman v. Indus. Comm. (1999), 87 Ohio St.3d 171, 173, the court stated:
 Despite the laudable goals of wage-loss compensation, there is a heightened potential for abuse whenever weekly compensation and wages are concurrently permitted. In response to this susceptibility, certain post-injury employment is more carefully scrutinized. Among these are part-time and self-employment. Described generically as voluntary limitations of income, these two categories are examined to ensure that wage-loss compensation is not subsidizing speculative business ventures or life-style choices. State ex rel. Ooten v. Siegel Interior Specialists Co. (1998), 84 Ohio St.3d 255 * * *; State ex rel. Pepsi-Cola Bottling Co. v. Morse (1995), 72 Ohio St.3d 210[.] * * *
 {¶ 35} Pursuant to Harsch and Brinkman, a case-by-case analysis is to be performed in determining whether a claimant has made a good-faith effort to secure comparably paying work and whether a claimant who is working and receiving wages must also continue to make a good-faith effort to secure other employment which would help to alleviate the wage loss.
 {¶ 36} In the present case, relator failed to submit the proper documentation and the lack of any evidence that she attempted to contact other employers in an effort to find suitable employment which would alleviate the wage loss, especially for the nine month period when she worked part-time as a hostess. Relator contends that, because she was *Page 19 
working full time, she was not required to maintain a job search. However, given the state of the present record, this magistrate finds that relator was not working full time, either when she worked as a hostess or when she was employed by the school. There are significant gaps in the record as well. As such, the magistrate finds that relator has not demonstrated that the commission abused its discretion in finding that she failed to make a good-faith effort to secure comparably paying work in the present circumstances. Relator had the burden of proof and the commission did not abuse its discretion in finding that she failed to meet it.
 {¶ 37} Further, the magistrate finds that the commission's order satisfies the requirements of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, and its progeny. Relator contends that the commission did not cite the evidence upon which it relied; however, what the commission did state was that claimant failed to submit evidence to meet her burden of proving that she suffered a wage loss. The commission cannot cite to evidence which does not exist in the record.
 {¶ 38} Based on the foregoing, it is the magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying her application for wage loss compensation and this court should deny relator's request for a writ of mandamus. *Page 1