[Cite as *State ex rel. Oldaker v. Indus. Comm.*, 2014-Ohio-470.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Kenneth D. Oldaker, II, | : | |
| | : | No. 13AP-288 |
| Relator, | : | (REGULAR CALENDAR) |
| v. | : | |
| Industrial Commission of Ohio and City of Columbus, | : | |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on February 11, 2014

*Law Office of Thomas Tootle Co., L.P.A.*, and *Thomas Tootle*, for relator.

*Michael DeWine*, Attorney General, and *Stephen D. Plymale*, for respondent Industrial Commission of Ohio.

*Richard C. Pfeiffer, Jr.*, City Attorney, and *Wendy S. Kane*, for respondent City of Columbus.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Kenneth D. Oldaker, II, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's application for working wage loss ("WWL") compensation and to enter an order granting the application.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate, who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The relator admitted he stopped looking for comparably paying employment when, after a job search of slightly more than one month, he began working as a deer herd manager for his wife's company for significantly less money than he made in his past employment as a fireman. Based on these facts, the magistrate found that the commission did not abuse its discretion in denying relator's application for WWL compenastion. Because the commission did not abuse its discretion when it found that relator had not utilized his best efforts to obtain suitable employment that would ultimately eliminate the wage loss, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed an objection to the magistrate's decision. The commission and respondent, City of Columbus, have filed a memorandum in opposition to relator's objection. Relator argues the magistrate's decision is in error because it renders WWL compensation unattainable for firefighters and other high wage earners who have been disabled from their previous job as a result of a work-related injury. We disagree.

{¶ 4} The Supreme Court of Ohio has held that a claimant is required to demonstrate a good-faith effort to search for suitable employment that is comparably paying work before the claimant is entitled to both nonworking and WWL compensation. *State ex rel. Pepsi-Cola Bottling Co. v. Morse*, 72 Ohio St.3d 210 (1995); *State ex rel. Reamer v. Indus. Comm.*, 77 Ohio St.3d 450 (1997); *State ex rel. Rizer v. Indus. Comm.*, 88 Ohio St.3d 1 (2000). A good-faith effort necessitates a claimant's consistent, sincere, and best attempt to obtain suitable employment that will eliminate the wage loss. *State ex rel. Bishop v. Indus. Comm.*, 10th Dist. No. 04AP-747, 2005-Ohio-4548, ¶ 10; Ohio

Adm.Code 4125-1-01(D)(1)(c).  " 'Comparably paying work' means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment."  Ohio Adm.Code 4125-1-01(A)(8).

{¶ 5}  Relator searched for comparably paying suitable work for a little more than one month before taking a low paying job with his wife's company, working out of their home.  Relator stopped all efforts to search for comparably paying suitable work after taking the job with his wife's company.  Given these undisputed facts, we find that the commission did not abuse its discretion in denying WWL compensation.

{¶ 6}  Relator invites the commission and/or respondent to prove that suitable work with comparable pay is available to relator.  This is not the commission's burden nor the burden of respondent.  Relator has the burden to demonstrate a good-faith effort to search for comparably paying suitable employment.  Again, given the undisputed facts, the commission did not abuse its discretion in finding that relator failed to meet this burden.  For these reasons, we overrule relator's objection.

{¶ 7}  Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law.  In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

{¶ 8}  We also grant the commission's motion to strike relator's October 22, 2013 objection to the nunc pro tunc magistrate's decision.  That decision corrected a typographical error changing the word "physician" to the word "position."  Because

relator attempts to use an objection to the nunc pro tunc entry as a vehicle to argue the

merits of his request for a writ of mandamus, we grant the commission's motion.

*Commission's motion to strike objections to nunc pro tunc decision granted;*
*objection overruled; writ of mandamus denied.*

TYACK and BROWN, JJ., concur.

_____

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State of Ohio ex rel.                                     :
Kenneth D. Oldaker, II,

                                                         :                    No. 13AP-288
          **Relator,**

                                                         :                    (REGULAR CALENDAR)

v.
                                                         :
Industrial Commission of
Ohio and City of Columbus,                               :

          **Respondents.**                                :

---

### NUNC PRO TUNC

### M A G I S T R A T E' S  D E C I S I O N

### Rendered on October 15, 2013

---

*Law Office of Thomas Tootle Co., L.P.A.,* **and** *Thomas Tootle*, **for relator.**

*Michael DeWine*, **Attorney General, and** *Sandra E. Pinkerton,* **for respondent Industrial Commission of Ohio.**

*Richard C. Pfeiffer, Jr.,* **City Attorney, and** *Wendy S. Kane,* **for respondent City of Columbus.**

---

### IN MANDAMUS

{¶ 9}  Relator, Kenneth D. Oldaker, II, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for working wage loss ("WWL") compensation and ordering the commission to find that he is entitled to that compensation.

Findings of Fact:

{¶ 10} 1. Relator sustained a work-related injury on April 20, 2009 while working as a fire lieutenant for respondent the city of Columbus.

{¶ 11} 2. Relator's workers' compensation claim has been allowed for the following conditions:

> Sprain right knee & leg; tear right knee medial meniscus current; substantial aggravation of pre-existing right knee degenerative joint disease.

{¶ 12} 3. Relator underwent surgery to repair the tear to his right knee medial meniscus and received various periods of temporary total disability compensation.

{¶ 13} 4. Because he was unable to return to work as a fireman, relator was granted a partial disability retirement in January 2012. In March 2012, relator began seeking new work within his physical limitations.

{¶ 14} 5. On April 30, 2012, relator accepted a job working as a deer herd manager for Crosswoods Whitetails, LLC ("Crosswoods"), a company owned by his wife.

{¶ 15} 6. On June 18, 2012, relator filed his application for wage loss application.

{¶ 16} 7. The following facts are gleamed from the evidence relator filed in support of his application for wage loss compensation: (1) on March 14, 2012, relator created an account with OhioMeansJobs; (2) between March 14 and April 19, 2012 (a 37-day period) relator contacted 40 employers via internet/e-mail, in person and/or by telephone; (3) relator did not have any interviews; (4) relator did not search for any other employment after he became employed with Crosswoods; (5) relator's average weekly wage while working as a fireman was determined to be $1,677.85; (6) relator submitted documentation indicating that his bi-weekly pay from Crosswoods was $665 or $332.50 per week (equal to $9.50 per hour); and (7) relator was working approximately 35 hours a week.

{¶ 17} 8. In a letter dated September 5, 2012, relator's treating physician Mark A. Holt, M.D., indicated that relator was currently working seven days a week, five hours a day, and that his work was within his physical restrictions.

{¶ 18} 9. Relator also submitted the December 2, 2011 vocational report prepared by Al Walker which was originally submitted to the Ohio Police and Fire Pension Fund.

Mr. Walker notes that relator is a high school graduate and that his prior jobs include steel worker, EMT, firefighter, and fire lieutenant. Relator's transferable skills include, but are not limited to: communicating effectively by writing and speaking, actually looking for ways to help people, identifying and solving problems, and maintaining equipment.

{¶ 19} According to Mr. Walker:

Mr. Oldaker did not need vocational aptitude and interest assessment at this time. He has expressed no interest in beginning a new career at this time and plans on working on a part time basis only if he has too. He has also achieved supervisory and management positions.

* * *

On November 22nd, 2011 I examined Mr. Oldaker and made the findings previously listed. On the basis of this examination and review of the available medical records, I make the following judgment concerning the loss of earning capacity:

Earning capacity has been significantly reduced. If Mr. Oldaker were to begin a job search in the State of Ohio, Franklin County labor market he could expect a starting wage of $10.88 per hour.

Earning capacity assessment is based on the assumption that an individual is conducting a job search following an unplanned and forced job change. Displacement is usually caused by an injury or illness that has significantly diminished vocational functioning with few residual transferable skills intact, especially for job types in the client's work history with higher difficulty levels. The data base utilized for this analysis includes job titles from the Dictionary of Occupational Titles (DOT) that represent the most frequently placed job orders received by Ohio Employment Services for the county lived in. This earning capacity analysis is based on Mr. Oldaker's demonstrated work history for the last 15 years. Any skills acquired prior to then have not been utilized therefore not retained or have undergone significant technical medications.

Based on medical/psychological information and physical capacities provided Mr. Oldaker's previous training and accomplishments, physical/psychological limitations

> reported by Mr. Oldaker during his interview, there are sedentary and light vocational options available to him.
>
> Barriers to re-employment include the following: reduced earning capacity, decreased access to the local labor market, decreased physical capabilities, age, chronic pain, lack of vocational direction, and lack of preparation for a job search. Vocational rehabilitation services could specifically address these issues.

{¶ 20} 10. Relator's application was heard before a district hearing officer ("DHO") on November 8, 2012. The DHO granted relator's application finding that his current job duties were within his physical restrictions, he was working almost 40 hours per week and referenced the vocational evaluation (December 2, 2011 Al Walker report) prepared at the time relator applied for disability retirement which indicated that relator could expect to find a job in the state of Ohio at a starting wage of $10.88 per hour.

{¶ 21} 11. The city of Columbus appealed and the matter was heard before a staff hearing officer ("SHO") on January 4, 2013. The SHO vacated the prior DHO order finding that relator had not sought suitable employment which was comparably paying work. Specifically, the SHO stated:

> The Injured Worker has requested the payment of working wage loss compensation beginning 04/30/2012. On that date he was hired by Crosswoods Whitetails, LLC, a business owned and operated by his wife. He was hired as a whitetail deer herd manager and according to his testimony and his wife's testimony, he works approximately five hours per day, seven days per week. He is paid approximately $9.50 per hour for this work. His latest pay stubs for the period ending 12/09/2012 reflect earnings of $665.00 every two weeks. Thus, the Injured Worker is earning approximately $332.50 every week. In comparison, the Injured Worker's average weekly wage is $1,677.85. Thus, the difference between the average weekly wage and the Injured Worker's current earnings is approximately $1,345.35 each week.
>
> Prior to the Injured Worker's date of hire with his current employer, he began to search for work within his physical restrictions provided by his physician of record, Dr. Holt. The Injured Worker contacted a variety of potential employers both online and in person beginning in March, 2012 and also registered at that time with the Ohio Department of Job and Family Services. The Injured Worker

was not able to find work with any of the employers he contacted so he ultimately accepted a job with the company owned by his wife.

Dr. Holt completed a C-140 on 03/22/2012 that provided permanent restrictions on the Injured Worker's work activity. Among those restrictions, the Injured Worker is limited to four hours of sitting per day and combined standing and walking activities for two to three hours per day, for a total of six to seven hours of work each day. Further, the 09/05/2012 office note and 09/05/2012 narrative report from Dr. Holt indicate that the Injured Worker's current job is within his physical restrictions as Dr. Holt demonstrates a clear understanding of the Injured Worker's current job duties and physical restrictions. Therefore, the Staff Hearing Officer finds that the Injured Worker's current employment is "suitable employment" as defined by Ohio Administrative Code 4125-1-01(A)(7).

However, Ohio Administrative Code 4125-1-01(D)(1)(a)(iii) also states that as a prerequisite to receiving wage loss compensation an Injured Worker must demonstrate that he has registered with the former Ohio Bureau of Employment Services (now the Ohio Department of Job and Family Services) "and begun or continued a job search if no suitable employment is available with the employer of record." In this instance the Injured Worker has clearly demonstrated that he registered with the Ohio Department of Job and Family Services and that there is no suitable employment within his restrictions available with the Employer of record. However, the Injured Worker has not continued the job search effort that he began before he was hired by his current employer. To the contrary, when questioned at [the] hearing the Injured Worker stated that he had not performed a job search since his date of hire, stating "Why would I? I have a job."

Although the Injured Worker is currently employed, his current employment is not "comparably paying work" which is defined by Ohio Administrative Code 4125-1-01(A)(8) as "suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment." Here, the Injured Worker's average weekly wage is $1,677.85. His current rate of pay is approximately $332.50 per week, nowhere near his former earnings with the Employer of record. As the Injured Worker's current

earnings do not even begin to approach his average weekly wage, his current employment is clearly not "comparably paying work" as defined by the rule.

Where the Injured Worker has not returned to comparably paying work, he is required to conduct a good faith search for suitable employment which is comparably paying work pursuant to Ohio Administrative Code 4125-1-01(D)(1)(c). The only exception to the job search requirement listed in this rule is where an Injured Worker is receiving public relief and is a work relief employee. There is no evidence that the Injured Worker is such an individual. Further, there is no evidence that the Injured Worker reasonably expects this position to soon develop into comparably paying work as the Injured Worker did in Brinkman v. Indus. Comm. (1999), 87 Ohio St.3d 171, thus negating the need for a job search.

The Injured Worker has accepted essentially unskilled, low paying work after a relatively brief search for other work, has accepted work with pay that does not begin to approach his average weekly wage, and has not conducted a job search of any kind in the eight months since his date of hire with the current employer on 04/30/2012. This does not equate to "consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss" as required by Ohio Administrative Code 4125-1-01(D)(1)(c). Therefore, the Staff Hearing Officer finds that the Injured Worker has not satisfied the requirements for the receipt of working wage loss compensation pursuant to Ohio Administrative Code 4125-1-01. Accordingly, it is the order of the Staff Hearing Officer that working wage loss compensation is denied from 04/30/2012 through 12/09/2012, the last date for which wages are on file.

{¶ 22} 12. Relator's further appeal was refused by order of the commission mailed January 29, 2013.

{¶ 23} 13. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 24} Relator contends that the commission abused its discretion by finding that he had not met his burden of demonstrating that he had sought and obtained suitable employment which is comparably paying work and that the commission abused its discretion by denying his application for WWL compensation. Relator asserts that his job search was reasonable and points out that his new job earns $9.50 per hour which is near

the $10.88 per hour Mr. Walker noted was attainable. Relator argues that the commission forces claimants to continue searching for a job that does not really exist.

{¶ 25} For the reasons that follow, the magistrate finds that relator has not demonstrated that the commission abused its discretion when it denied his application for WWL compensation. These cases are very fact specific and the commission has discretion to reach conclusions one way or the other, and as long as the conclusions are reasonable, there is no abuse of discretion.

{¶ 26} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.,* 68 Ohio St.2d 165 (1981).

{¶ 27} In order to receive workers' compensation, a claimant must show not only that a work-related injury arose out of and in the course of employment, but, also, that a direct and proximate causal relationship exists between the injury and the harm or disability. *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993). This principle is equally applicable to claims for wage loss compensation. *State ex rel. The Andersons v. Indus. Comm.,* 64 Ohio St.3d 539 (1992). As noted by the court in *State ex rel. Watts v. Schottenstein Stores Corp.*, 68 Ohio St.3d 118 (1993), a wage loss claim has two components: a reduction in wages and a causal relationship between the allowed condition and the wage loss.

{¶ 28} In considering a claimant's eligibility for wage loss compensation, the commission is required to give consideration to, and base the determination on, evidence relating to certain factors including claimant's search for suitable employment. The

Supreme Court of Ohio has held that a claimant is required to demonstrate a good-faith effort to search for suitable employment which is comparably paying work before claimant is entitled to both nonworking and working wage loss compensation. *State ex rel. Pepsi-Cola Bottling Co. v. Morse*, 72 Ohio St.3d 210 (1995); *State ex rel. Reamer v. Indus. Comm.*, 77 Ohio St.3d 450 (1997); and *State ex rel. Rizer v. Indus. Comm.*, 88 Ohio St.3d 1 (2000). A good-faith effort necessitates claimant's consistent, sincere, and best attempt to obtain suitable employment that will eliminate the wage loss.

{¶ 29} Ohio Adm.Code 4125-1-01(A) defines "Suitable employment" and "Comparably paying work" as follows:

> (7) "Suitable employment" means work which is within the claimant's physical capabilities, and which may be performed by the claimant subject to all physical, psychiatric, mental, and vocational limitations to which the claimant is subject at the time of the injury which resulted in the allowed conditions in the claim or, in occupational disease claims, on the date of the disability which resulted from the allowed conditions in the claim.

> (8) "Comparably paying work" means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.

{¶ 30} Ohio Adm.Code 4125-1-01(C) identifies for claimants the relevant information which must be contained with an application for wage loss compensation. Specifically, Ohio Adm.Code 4125-1-01(C) provides:

> (5) All claimants seeking or receiving working or nonworking wage loss payments shall supplement their wage loss application with wage loss statements, describing the search for suitable employment, as provided herein. The claimant's failure to submit wage loss statements in accordance with this rule shall not result in the dismissal of the wage loss application, but shall result in the suspension of wage loss payments until the wage loss statements are submitted in accordance with this rule.

> (a) A claimant seeking or receiving wage loss compensation shall complete a wage loss statement(s) for every week during which wage loss compensation is sought.

(b) A claimant seeking wage loss compensation shall submit the completed wage loss statements with the wage loss application and/or any subsequent request for wage loss compensation in the same claim.

(c) A claimant who receives wage loss compensation for periods after the filing of the wage loss application and/or any subsequent request for wage loss compensation in the same claim shall submit the wage loss statements completed pursuant to paragraphs (C)(5)(a), (C)(5)(d) and (C)(5)(e) of this rule every four weeks to the bureau of worker's [*sic*] compensation or the self-insured employer during the period when wage loss compensation is received.

(d) Wage loss statements shall include the address of each employer contacted, the employer's telephone number, the position sought, a reasonable identification by name or position of the person contacted, the method of contact, and the result of the contact.

(e) Wage loss statements shall be submitted on forms provided by the bureau of workers' compensation.

{¶ 31} Thereafter, Ohio Adm.Code 4125-1-01(D)(1)(c) provides certain relevant factors which must be considered by the commission and upon which the commission's determination must be made in evaluating whether claimant has made a good-faith effort. Those factors include: claimant's skills, prior employment history, and educational background; the number, quality, and regularity of contacts made with prospective employers; for a claimant seeking any amount of working wage loss compensation, the amount of time devoted to making perspective employer contacts during the period for which working wage loss is sought, as well as the number of hours spent working, any refusal by claimant to accept assistance from the Ohio Bureau of Workers' Compensation in finding employment; any refusal by claimant to accept the assistance of any public or private employment agency; labor market conditions; claimant's physical capabilities; any recent activity on the part of claimant to change his place of residence and the impact such change would have on the reasonable probability of success and the search for employment; claimant's economic status; claimant's documentation of efforts to produce self-employment income; any part-time employment engaged in by claimant and whether that employment constitutes a voluntary limitation on claimant's present earnings;

whether claimant restricts his search to employment that would require him to work fewer hours per week than she worked in the former position of employment; and whether, as a result of physical restrictions, claimant is enrolled in a rehabilitation program.

{¶ 32} On several occasions, the Supreme Court of Ohio has denied wage loss compensation to claimants who, without first conducting a job search, became self-employed after it was medically determined that the claimant was unable to return to the former position of employment. In *State ex rel. Ooten v. Siegel Interior Specialists Co.*, 84 Ohio St.3d 255 (1998), the court stated that the causal relationship between the allowed conditions and the wage loss is often satisfied by evidence of an unsuccessful search for employment at the pre-injury rate of compensation. Although the *Ooten* case involved a claimant who became self-employed, the court has also applied the same reasoning where a claimant accepts other employment and is not self-employed.

{¶ 33} In *State ex rel. Jones v. Kaiser Found. Hosp. Cleveland*, 84 Ohio St.3d 405 (1999), the claimant's allowed condition left her unable to return to her former position of employment. She obtained other employment earning less than she had with her former employer. The commission denied her motion finding that she had failed to meet her burden of proof. Citing its decisions in *Pepsi-Cola* and *Ooten*, the court reiterated that a claimant seeking wage loss for the earnings differential between the former position of employment and subsequent employment may find the latter subject to scrutiny, particularly where the subsequent job is a self-employed or part-time position. The court reasoned that the additional scrutiny ensures that the requisite causal relationship exists between the allowed conditions and that claimant's inability to secure suitable employment which is comparably paying work.

{¶ 34} As in our case, the claimant in *Jones* argued that, although she failed to present evidence of a job search, an adequate job search should be inferred from her successful acquisition of subsequent employment. The court disagreed and stated:

> The mere fact of a job search does not entitle a claimant to wage-loss compensation. There is a qualitative component to that job search that must be satisfied—one of adequacy and good faith. *State ex rel. Consol. Freightways v. Engerer* (1996), 74 Ohio St.3d 241 * * *. Adequacy is determined on a case-by-case basis and can encompass many factors,

including the number and character of job contacts. *State ex rel. Vanover v. Emery Worldwide* (1997), 80 Ohio St.3d 367 * * *. Adequacy cannot be evaluated when a claimant fails to submit any evidence of his or her job contacts.

*Id.* at 407.

{¶ 35} *See also State ex rel. Martishius v. Indus. Comm.*, 10th Dist. No. 06AP-581, 2007-Ohio-3551; *State ex rel. Whatley v. Indus. Comm.*, 10th Dist. No. 06AP-939, 2007-Ohio-3990; *State ex rel. Morrow v. Indus. Comm.*, 10th Dist. No. 06AP-1098, 2007-Ohio-5084.

{¶ 36} In the present case, it is undisputed that relator stopped looking for suitable employment which is comparably paying work when he began working as a deer herd manager for his wife's company. Further, it is undisputed that relator is currently working approximately 35 hours per week and that he is making significantly less money than he made when he was employed as a fireman.

{¶ 37} Relator cites several cases where the courts have excused claimants who obtained employment from continuing to search for other employment; however, the magistrate finds that those cases are distinguishable. For example, in *State ex rel. Brinkman v. Indus. Comm.*, 87 Ohio St.3d 171 (1999), Brinkman was injured while he was employed as a police officer for the city of Columbus. He later found part-time work as a security officer. Although the commission denied him wage loss compensation, the Supreme Court of Ohio disagreed finding that Brinkman's testimony demonstrated that part-time employees were given preference for full-time work and that Brinkman had a reasonable expectation that his wages would increase.

{¶ 38} Relator also cites *State ex rel. Ameen v. Indus. Comm.*, 100 Ohio St.3d 161, 2003-Ohio-5362; however, the magistrate finds that the *Ameen* case is likewise distinguishable from relator's case. In *Ameen*, the claimant sustained a work-related injury when she was working as a nurse. Unable to return to nursing duties, Ameen went back to school and began working as a teacher. Her teaching job paid slightly less than her nursing job and the court determined that she was not required to continue looking for employment when she likely would not leave her job as a teacher, a job for which she had completed additional education.

{¶ 39} A claimant is only eligible for WWL compensation if there is a casual relationship between injury and reduced earnings and the claimant's job choice was based on injury-induced unavailability of other jobs and not simply a lifestyle choice. *Jones*.

{¶ 40} To the extent that relator relies on the vocational report submitted with his disability application, it must be remembered that the commission is a vocational expert and does not require outside vocational evidence. *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266 (1997).

{¶ 41} Here, the commission determined that relator accepted an essentially unskilled, low paying job from his wife after a relatively brief search for other employment. Although relator did present evidence that the deer management field is growing, there is no evidence that relator has opportunities to capitalize on that growth by advancing in the company or earning more money. The commission did not abuse its discretion when it found that relator had not utilized his best efforts to obtain suitable employment that would ultimately eliminate the wage loss.

{¶ 42} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it denied his application for WWL compensation and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA BROOKS

NOTICE TO THE PARTIES
Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).